Good morning. My name is Rex Palmer. I represent James Smith and I represented him in the underlying tribal court trial. James Smith was driving the dump truck, which is the vehicle that drove him to Salish Kootenai College. In tribal court, passengers that were injured in that rollover sued the tribe, Mr. Smith, and the school. Since they didn't serve Smith for some period of time, discovery had proceeded through several depositions and the tribe had been dismissed out based on the affirmative claims that it had no ownership, no control over, and no relationship with the school, except as the sovereign would have over any corporation within its boundaries. As well, the school cross-claimed against Smith for the damages that occurred, and it's in that context that Smith cross-claimed against the tribal court. So really, the school and Smith didn't choose tribal court, but they were brought in by the passengers. Now, the problem that arises out of the district court's decision is that Smith's cross-claims under the court's rationale, Smith's cross-claims against the school would find themselves with jurisdiction in tribal court. But the passengers' claims against Smith, not a tribal member, and the school's cross-claims against Smith would not have jurisdiction in tribal court under the district court's rationale. Now, that splitting up of claims arising out of one single vehicle rollover completely defies the concept of subject matter jurisdiction. It sounds more like personal jurisdiction, which might be allowed or set aside depending on consent. It's an analysis that by picking out the tribal defendant as being the controlling feature of, I mean, if it's a tribal defendant, which we do not concede, but if it picks out a tribal defendant as the controlling feature of tribal subject matter jurisdiction, that same vehicle or one like it with all the problems that caused it to go out of control and impossible to control when the spring did break, that same thing could happen out here on 6th Street in Seattle, could hit a pedestrian or a busload of people, all of whom would have to sue the school. I was, you know, these tribal jurisdiction things are tricky, as you know. So let me ask you if there's a simple way to get there, and that is if you were to assume, we're trying to figure out in the context of the district court's order what's the status of the school potentially. But if you just skipped all that and said, do any, even if all this landed magically under the first part of Montana, do any of the exceptions apply? And if you were to determine that none of the exceptions applied, wouldn't that be a clean way to determine that there is no tribal court jurisdiction? Right. That's how we see the law. We see the law as being that if a non-tribal member is a non-tribal member, unless you meet these two rather narrow exceptions, okay, one or the other exceptions, you're going to have to show a consensual relationship. And that's how Williams v. Lee fits into the broader picture that the courts have called the pathmaking case, the Montana case. And I think that's where we went wrong, is the district court didn't do a Montana analysis. Well, how does arm of the tribe analysis, in other words, is the school an arm of the tribe? No. No. They disavow that. Whatever else they might disavow, but I'm asking a question because I found something in your brief. I was going through the factors that might make a determination whether the school is an arm of the tribe, because if they are an arm of the tribe, then we have a whole different look at this, don't we? I don't think so, because we have a non-member involved. That's how I look at it. It may be that if the school is part of the tribe, that there's still not jurisdiction. There's lots of arguments. But it affects the analysis. I think I would like, along with Judge Brunetti, I really want you to, I'd like to hear you focus on whether this is a community college that serves people who live on the reservation. So I'm not seeing it as a tribal entity. Even if it were, there's other issues. But I think you know the record better than we do. And I would appreciate if you could respond to Judge Brunetti's question. I have the same question. I want to understand if this is part of the tribe, the college. And referring to your brief page 17, you note that the college might receive funding as a tribal college under the Tribally Controlled Community College Assistance Act, which is a federal act. And that really starts me spinning, because it seems to me all the other factors in determining arm of the tribe tend to go toward the tribe until you get to the funding. And this is the only thing I can find anywhere in the record about where they get their funding. So that's just my concern. Right. And I think that however else the tribe was set up, and whatever its bylaws and constitution say, the affidavit of its president submitted into this proceeding by the tribe itself, Joe McDonald, the president of the college, said there is no connection. If it was set up in that way, it's been disavowed, it's been set aside somehow, because he has said and successfully got the tribe out of tribal court, got that claim dismissed on that very affirmative allegation, that it's been dishonored. So would that be some kind of judicial estoppel at this point, or do we have to look at it anew on a legal basis? Well, I think judicial estoppel could apply. But even looking at it anew, it's the only testimony on that subject. So if the rule was that they have to report to the board, the tribal council, once a year, there's no record that they did. The record indicates that. Well, that's going to be determined if they didn't report to the board. If they were supposed to report to the board, we're looking at a legal analysis, I think. What is the legal analysis of what this college is? Now, if they violate some of the rules, it still doesn't maybe, unless they've gone so far, they've become some sort of entity that doesn't fit their classification. But somehow I've got to start somewhere and try to classify this entity. That's what I'm struggling for. Right. And that classification would become important in discrimination cases where a statute is using a definition that expressly sets Indians aside. And you look to that definition as all the cases that the district court looked at. You look at all those cases, and since it's a statutory creature, you look at the definition within the statute, and you determine that they may be a tribe for that purpose. Well, they were incorporated in tribal law, and they were incorporated in state law. And other than funding, which I don't understand where that came from, everything else is tribal. Tribal, tribal, you have a tribal control by the board, the forms, tribal functions, they can take property in its own name, which is a tribe name, can be sued and sued on its own behalf, and whether money judgment would create a potential liability, the tribe is likely insulated. But still, it all seems to end toward the tribe, other than the funding issue, and other than the fact that they were incorporated under not only the state law, but the tribal law. And it seems like this is a classic tribal U.S. sovereignty problem. Unless I'm missing something. I was going to say three minutes. I'm down to one. Should I answer your question? Please answer the question, and then we'll give you some time for rebuttal. Okay. Thank you very much. The school and the tribe in disavowing the connection, I think, answer the question, as all the incidental things that might be pointed to as being a connection. They outright said there's no control. There's no relationship except as the sovereign. There's no ownership. In fact, there can be no ownership. That's where I see this. That is the cutoff point, is that the only testimony on this matter sets that aside. Nevertheless, if the tribe has some connection with the school, that would not generate jurisdiction over a nonmember. Under Montana. Under Montana. Even if you view the college as a tribal member under some arm of the tribe theory, it still wouldn't permit tribal court jurisdiction over Smith in a tort claim relating to a highway that's a public right-of-way, and so under the Montana exception. Right. And under that analysis, we don't run into the problem of splitting up a claim between a multitude of courts. Thank you. Are you splitting your time or not? No, Your Honor. May it please the court, counsel. My name is Fred Simpson. I represent one of the Apoese Salish Kootenai College. With me at the table today is John Harrison. He represents the appellate court of the Confederated Salish Kootenai Tribes, and he has graciously granted me the entire time for Apoese. Of course, he is available to answer any questions. That was a brilliant decision on your part. Not that he will argue it better, or you could have argued it, but not to split it is a great decision. I'd like to get you to the heart of my concerns, because you don't have 20 minutes. First of all, I feel that under Montana and straight, and the Supreme Court's jurisprudence, that even if the tribe were viewed as a, even if the college is viewed as a tribal entity, that there's still not jurisdiction in tribal court on a tort claim relating to a highway accident over Smith. So I guess that's my concern. To get my vote on this case, you've got to talk me out of that position, but I'd like to let you do it. But let me say, before I get to that, I also am really skeptical that the college can be viewed as a tribal entity. And so I have a view different than Judge Brunetti's. Let me just put it on the table for you. It's true that the tribe gets to appoint board members, but as I understand it, they have a right to select the members of the tribe as board members. But once they're selected, those are individuals who have a duty to the college, like a fiduciary duty as trustees of the college. They can't take directions from a tribal governing council. They're like fiduciaries to the college. And the tribe could have probably, I don't know, but it may be they could even appoint non-tribal members. They have to appoint tribal members. Okay, but once they appoint them, I think their duty is not to the tribe, but to the college. So I'm not viewing it as a tribal entity, but I'm happy to have you change my mind in argument. Let me start with your first, answering your first question first. In our view, and as the district court determined, the Montana analysis does not apply here, because under Williams v. Lee, the fact that the plaintiff is a tribe, is a non-member, is irrelevant. It's our position that the factual record, as established in this case, is pretty clear that Salish Kootenai College is a tribal entity. And we have the affidavit of Joe McDonald, which attaches the tribe's articles and bylaws, and those include a number of things. The tribes chartered Salish Kootenai College in 1977. Do people, if someone's not a tribal member, can they go to the college? They can. And aren't there a fair number of people who live on the reservation who aren't tribal members? That is correct. And who attend this college routinely, right? And if somebody from another area wanted to attend the college, could they? I assume it draws from the reservation area, but if someone from Seattle wanted to go to that college, could they apply and go to it? They could, although the primary purpose of the college is set forth in its founding documents is to serve the Flathead Indian Reservation population, which, by its nature, is the Confederated Salish and Kootenai people. The primary purpose of Seattle Community College is probably to serve kids in Seattle, but they have exchange students from all around the world, you know, so. What do we, even his affidavit, was that, that was submitted in the tribal court originally? Yes, Your Honor. Okay. And... It's in the record in the district court as well. Right. And he basically says, except as a sovereign governmental entity, the tribe does not have control or responsibility for the operations of the college, its officers, agents, et cetera. And that's on a day-to-day basis, and for purposes of sovereign immunity, that's correct. Right. But nonetheless... But don't, even if you don't have a complete parallel between sovereign immunity and whether something is an agent of the sovereign, in effect, a lot of the factors are the same, and it seems to me that he kind of wants to have it both ways here, in the tribal court, and now, of course, we're in the district court, or the federal court, and, you know, I think the affidavit's entitled in some way as to how, what is the basis of the college essence. And it just seems to me that they spent all the time distancing themselves from the tribe and saying they're not part of the tribe other than to have members appointed by the tribal council. I think it's much more significant than that, in that the board retains the authority to remove, I'm sorry, the tribal council retains the authority to remove board of directors for just cause. It retains the authority to accept... For just cause. So if someone's a thief or they do a crime, you can get them out of there. But you don't contend, do you, that the tribe can give a directive to one of these board members saying, we want you to vote this way on this issue? I don't contend that that's the case. And wouldn't you, in fact, acknowledge that the tribe can't give an order to these directors that they have a fiduciary duty to the college, considering everything that they should consider about the well-being of the college, the faculty, and the students? Considering that the tribal council retained the authority to pass further regulations to govern the conduct of the school, I don't believe that's the case. I think that the council ultimately has the control over the college and can revoke, in fact, the college's charter and the documents that found... And maybe they can revoke the charter, maybe they can pass regulations that apply, but it doesn't seem to me they can tell directors or trustees how to vote. No, but nonetheless, I don't believe that it takes away from the tribal character of Salish Kootenai College. The fact is that it's controlled ultimately by the tribal council. The council retains a significant level of control with respect to... What kind of control? So let's focus on that. There's one level of control that's like day-to-day control. Yes. That's normally like staff or the president, the administration, officers of the school. Then there's another level of control, which is like setting policies that the president and officers have to follow. That level of control is in the first instance with the board, not with the tribe, as I see it. And then there may be another level of control that the tribe has some influence on to set regulations or to remove someone if they're acting improperly. But that's not like day-to-day control, and it's not even normal policy-setting control, right? Isn't that like an extraordinary power they have? I think it's the ultimate regulatory and administrative control that the tribe exerts. They've got that in their hip pocket that they can pass regulations, but they don't day-to-day set policy for the college, do they? Not on a day-to-day basis, but the founding documents show that the tribes ultimately intended to keep control by requiring, for instance, the school to comply with tribal personnel hiring guidelines. Let me ask you, you know, we're always trying to do kind of a Venn diagram with these Indian cases on where people stand. Do you have a case where there's a member, a non-member, and non-tribal land? A member versus a non-member? On non-tribal land. Like Strait. But Strait I thought was on tribal. Strait was a case that occurred on alienated property. Alienated property within the reservation. Right. Okay. So, no, I can't think of one that directly addresses that, but it's our contention that even if the court were to apply the Montana analysis, the consensual relation exception clearly says, or would apply in this case, because Mr. Smith entered a consensual relation with Salish Kootenai College, a tribally controlled community college under 25 U.S.C. Section 1801. He consented to be a student there. He consented to be a student at a tribally controlled community college. Okay, so there's everybody who's a student at the tribe. Let's assume that the tribe, at the college, there's some kind of overpass between buildings and something collapses and 100 people are injured, sort of, you know, relatively, or a stadium, sort of a relatively mass disaster. Are all the students remitted just to tribal court because they have a consensual relationship as students and they couldn't go into state court or federal court? Yeah, I think that's the case. I think that this relationship is at the heart of Mr. Smith's claim against my client. He's alleging, in essence, that my client provided him negligence instruction, and that occurred on tribal property as found by the district court in this case. Well, it just seems, too, if you go back to our in-bank opinion in Lewis, we made pretty clear that Montana didn't stretch this exception to meaning any time there's a passing relationship. We've never extended it to a circumstance like this, have we? First Montana exception. I believe if you look at the McDonald's v. Means case, that case said where the accident occurs on tribal land, we don't even get to the Montana analysis. We don't have to go there because it does involve tribal land, and the tribes have the adjudicative authority over those kinds of claims. Just to clarify something on one of your last comments on my question, you mentioned that under your consent theory that he has a consensual relationship with the school and he's making a claim based on bad instruction or something. I thought that your claim against him on a cross-claim, that is the college's cross-claim against him, was based on sort of general tort duties, kind of like he's driving carelessly. Am I right in that? It was based on general tort duties in that he was not permitted to drive the truck, according to our set of facts. Of course, our cross-claim against Smith was dismissed prior to trial in the tribal court. And his cross-claim against you, you characterize as based on bad instruction? That's the way he's characterized it. I thought there were also issues of bad maintenance or truck wasn't properly maintained. Correct. And it's our position, and I think the district court correctly found, that those allegations concern conduct occurring on tribal property. Well, we don't know where the maintenance for the truck would be, do we, from this record? Part of my concern on that issue was that the record, while you might presume if there was evidence, someone said we keep the trucks parked on the campus and that's where we grease them up or, you know, check the steering or whatever, maybe you'd think that would be the case, but I didn't see anything in the record that made out where the truck might have been maintained here. Smith's only allegation concerning non-tribal property is the fact that the accident occurred on U.S. 93. There are no allegations of any negligence occurring anywhere else. He's simply saying this is where the accident occurred. It occurred on 93, but the negligence occurred in the classroom, if you will. And as the district court and the tribal court of appeals found, the college campus is located on tribally owned property. Do you think in a case like this, I mean, leaving aside how it might sort out, but do you think basically you're going to start taking all the claims and cross claims and each one of those is going to end up potentially in a different court? I think that's a danger, and I think that for purposes of uniformity, claims against tribal entities like Salish Kootenai College need to be adjudicated in the same court system of the tribe that created and ultimately retains control of that. If it's a tribal entity. If it's a tribal entity. Right. Okay, thank you. Thank you. You don't have any time left. We'll give you 30 seconds to sum up or respond to any point. Thank you. Here we know that the instruction did occur on the roadway. Mandatory training and mandatory hours had to be logged on the roadway. On the roadway, on the side of the road is where they kick the tires. That's where they check the oil. These are all things that had to be done as well. They drove off of the reservation entirely into Missoula County to do testing at the way stations and to do additional testing at the certification center in Missoula, Montana. That's all part of the instruction. Now, we did stipulate early in this litigation to adopt all the record from the underlying tribal litigation. That's how the Joe McDonald affidavit ends up in this litigation is by stipulation, as with all of the other discovery. Thank you. Thank you. The case of Smith v. Salish Kootenai College is submitted.
judges: Brunetti, McKeown, Gould